GEORGE W. VEST, APPELLANT, V. FARMERS COOPERATIVE
ELEVATOR COMPANY ET AL., APPELLEES.

FILED APRIL 19, 1922.   No. 22065.

1. **Corporations: SALE OF STOCK: MISREPRESENTATIONS: RESCIS-
SION.** Where the manager of a corporation is authorized to sell
shares of its capital stock, and in negotiating sales thereof falsely
and fraudulently represents the condition of the company and the
value of its capital stock, such representations will be regarded
as the representations of the company; and where a purchaser,
without knowledge of the true condition of the company and the
value of its capital stock, relies upon such false representations,
he may, upon the discovery of the fraud, rescind the contract and
recover the money paid.

2. ———: ———: ———: ———. Evidence examined, and *held*
that plaintiff acted with reasonable promptness to discover the
fraud and to tender back the shares of stock purchased and de-
mand a rescission of the contract of purchase.

APPEAL from the district court for Buffalo county:
BRUNO O. HOSTETLER, JUDGE. *Affirmed in part, and re-
versed in part.*

*W. D. Oldham, Fred A. Nye* and *M. H. Warlock,* for
appellant.

*John A. Miller, N. P. McDonald* and *J. M. Fitzgerald,*
contra.

Heard before MORRISSEY, C. J., DEAN, ALDRICH and DAY,
JJ.

MORRISSEY, C. J.

Plaintiff brought suit in the district court for Buffalo
county against the defendant Farmers Cooperative Eleva-
tor Company, of Riverdale, Nebraska, a corporation, and
its officers and directors, to rescind a contract whereby
plaintiff had purchased from the corporation ten shares
of its capital stock. He alleged that he had been induced
to purchase the stock through the false and fraudulent rep-
resentations of the defendants and their agent; tendered

back the stock; prayed that it be canceled; that he be released from all liability thereon; and that he be awarded a judgment jointly and severally against each defendant for the sum paid, together with interest.

For answer defendants admitted the corporate existence of the elevator company; that the defendant Fred Bargman was its president, and the defendant A. E. Walter was its secretary, and that the other defendants were stockholders and directors of the corporation, and that one John Bolin had been employed as its manager. They allege that plaintiff did not rescind his contract of purchase within a reasonable time, and that in reliance on his continued membership in the corporation the stockholders had paid into the treasury the sum of $8,000, in assessments on their shares of capital stock. The answer contains also a general denial and an allegation that defendants' stock is worth more than par, the purchase price. Plaintiff filed a reply in the form of a general denial of all new matter set out in the answer.

During the progress of the trial, on motion, the court dismissed plaintiff's cause of action as to all defendants except only the corporation, and its president, Fred Bargman, and its secretary, A. E. Walter. As to these defendants the trial continued until all the evidence in behalf of plaintiff and in behalf of the defendants had been introduced and the cause argued and submitted for final determination. The court then made a general finding in favor of the three defendants named, and entered a dismissal of plaintiff's cause of action. No complaint is made of the first order of the court. Plaintiff's appeal is prosecuted from the final judgment which released the corporation, its president, and its secretary from liability.

Defendant corporation was organized in 1914, by a group of farmers, primarily for the purpose of operating a grain elevator. It appears to have prospered for a number of years. Finally, it engaged in the lumber and implement business as well as in the grain business. From time to time dividends were declared, both in cash and in stock,

and the books of the corporation showed it to be prosperous, and making money. During the years 1918 and 1919, and for some time preceding, the defendant Bargman was president of the corporation. He was during the same period engaged in the banking business in Riverdale and held only a small block of stock in the corporation. Although president of the corporation, he was not actively and personally in charge of its management and business, but devoted his time chiefly to the banking business. During the same period the secretary, Walter, was a farmer and divided his time between his farm and the elevator. He was not at any time the active head or manager of the corporation. One Bolin, who is not shown to have been a stockholder or officer, was the active head and manager of the business during all the time plaintiff was negotiating for the stock which he purchased.

In addition to his authority to buy and sell grain and to conduct the lumber and implement business, Bolin had authority to sell shares of the capital stock in the corporation. Early in the year 1919 the corporation arranged to sell additional shares, and plaintiff arranged to buy one share at the par value of $100. At this time, however, the corporation had not procured from the state bureau of securities a permit for the sale of its capital stock, so, by mutual agreement, plaintiff's money was merely taken on deposit and the certificate of stock was not actually issued. Before November following the corporation procured the necessary authority for the issuance of its shares of stock, and in the interim plaintiff talked with the defendants Bargman and Walter, with the manager of the corporation, Bolin, and with others about the corporation and its business, and it is his contention that the parties mentioned falsely and fraudulently represented the financial condition of the corporation; and that he relied upon their representations, and, without knowledge of the true condition of the corporation, and believing it to be a prosperous, money-making institution, in November, 1919, paid to the corporation through its manager an additional $900 and

there was then issued to him a certificate for 10 shares of
the capital stock of the corporation; that under an agree-
ment with the manager this certificate was dated October
24, 1919, although in fact it was issued in November, 1919.
Inasmuch as no certificate was issued on the deposit of
the first $100 paid, and it appears to have been treated by
both parties as a deposit to be used by the company only
after the corporation secured permission to issue stock,
and was finally merged in the payment on the certificate
issued, the whole transaction may be treated as one culmi-
nating upon the day that the $900 was paid and the certifi-
cate of stock issued, November 22, 1919. Plaintiff testified
that before making the first deposit he talked with the de-
fendant Bargman, but his testimony does not show any
representations made by Bargman as to the condition of
the business or the value of the stock, further than to say
"that they were getting along pretty good, and that they
paid pretty good dividends, and that they paid 12 per cent.
interest." He testified that the manager, Bolin, urged
him to buy stock and represented that it was then worth
$164 a share; that the corporation paid 12 per cent. "in-
terest;" that it had been paying good dividends and that
20 per cent. stock dividends would probably be declared.
He testified that he asked Mr. Walter, the secretary, why
the company sold stock worth $164 for $100, and Mr.
Walter explained that the company was doing that in or-
der to escape paying income taxes, and that the money
derived from the sale of stock would enable the corpora-
tion to discount its bills. He testified to a second conver-
sation with the manager, and that the manager assured
him the company was doing well, and that if it did as well
for the succeeding six months as it had done during the
preceding six months it would pay a dividend of 25 per
cent., and that it might pay even a greater dividend, and
that the stock was then worth $184 a share; that at the
time of making the final payment of $900 he again talked
to the manager and was assured that the lumber business
was out of debt. He admitted having talked to a number

of parties, but claimed that in making the purchase he re-
lied upon the representations made by Bargman and Bolin,
"and the others."

Let us consider his testimony as to the representations
made by the manager, Bolin. These representations have
heretofore been indicated. The testimony of plaintiff, in
so far as it deals with the statements made to him by Bolin,
are not denied and we accept it as true. We find, then,
that Bolin represented the company to be doing a profit-
able business, that it owed no debts, and that its books
showed the capital stock to be worth, according to his first
statement, $164 a share, and, according to his second
statement, $184 a share. We think the evidence also
shows that plaintiff relied upon these representations and,
so relying, invested his money. It appears that at the time
these representations were made Bolin was the active head
and manager of the corporation; he was in charge of its
business and made the sales of stock on its behalf. His
representations were false and fraudulent, but we find
nothing in the record to warrant a finding that either Barg-
man or Walter was guilty of misrepresenting the condi-
tion of the company; that they had any knowledge that it
was financially embarrassed, or that its stock was of less
value than the books showed it to be. Nor does it appear
that either knew, or had reason to know, that the books
of the company did not make a true disclosure of the con-
dition of the company, or that the manager was making
false representations as to its condition.

Whatever the condition of the company may have been,
we find nothing which would warrant a judgment against
the defendant Bargman, or defendant Walter. We fully
concur in the conclusion reached by the trial court as to
these defendants. But as to the other defendant, the cor-
poration, we feel constrained to reach a different conclu-
sion. As we have said, plaintiff's testimony as to the rep-
resentations made by Bolin is uncontradicted. We have,
therefore, a situation where the plaintiff, a farmer living
in the neighborhood of this elevator, was solicited by the

manager of the company to invest in its capital stock. Its manager represented that it had in the past paid large dividends to its stockholders, that its debts were paid, and its stock was worth $164 or more a share. Relying on these representations plaintiff invested his money November 22, 1919. Before the close of that year the manager tendered his resignation. He continued to hold his place, however, until sometime in January, 1920. Upon investigation made early in the year 1920 by an attorney and an accountant employed by the stockholders to conduct an investigation into the affairs of the company, it was found that the company was insolvent, that its capital stock was not of the value it had been represented, but was of little, if any, value. It is not possible to determine from the books and records of the company its exact condition upon the very day that plaintiff paid his money, but no satisfactory explanation is made of the great difference which appears in the financial condition of the company soon after plaintiff became a stockholder and its condition as it had been represented to be by the manager when plaintiff paid for the stock. The most tangible evidence consists of the various exhibits purporting to show the condition of the company for some time before plaintiff made his investment and for some time thereafter, together with their elucidation by the oral evidence of an expert accountant. There is much of this evidence that is, perhaps, incompetent, but there appears to be sufficient competent evidence to show that the insolvent condition of the company as it was found after the resignation and retirement of the manager was not produced by anything that occurred after plaintiff became a stockholder, but rather that it was a condition that had existed for some time prior thereto. The stockholders and officers appear to have been in total ignorance of the true condition of the company and no culpability appears except such as may be charged to the manager. We cannot escape the conclusion that he, with knowledge of the true condition of the company, made the representations falsely and fraudulently, as is alleged by plaintiff, and the

corporation is bound by his acts.  *Olcott v. Bolton,* 50 Neb. 779, and cases therein cited.

Appellees assert that plaintiff did not proceed within reasonable time and with due diligence after the discovery of the fraud, and that he is therefore estopped to maintain this action.  After the manager tendered his resignation, the stockholders generally, plaintiff with the rest, realized that all was not well with the company.  Stockholders' meetings were held.  Plaintiff attended these meetings, and various methods were proposed to ascertain the condition of the company.  It is claimed that plaintiff participated in these meetings.  He denies that he voted in these meetings or took any part except on one issue, viz.:  It was proposed that a levy be made against stockholders, and the motion was stated in such a way that it would bind plaintiff to retain his stock and continue as a member of the company.  He admits that he voted on this question, but says that he voted against it.  Following these meetings certain of the stockholders paid into the treasury assessments on their stock.  In view of the difficulties encountered in ascertaining the true condition of the company, we cannot say that plaintiff was guilty of laches or that he might with reason be expected to move more promptly than he did.

There is the further contention that plaintiff failed to make a sufficient tender of his stock.  This contention is not, however, sustained by the evidence.  From the condition of the entire record it appears that, after the discovery of the fraud, with reasonable promptness, he took the necessary steps to tender back his stock, demand his money, and a rescission of the contract.

We therefore find that, as to the defendant Farmers Cooperative Elevator Company of Riverdale, the judgment of the district court should be reversed, with instructions to enter a judgment in favor of plaintiff and against said company as prayed for in plaintiff's petition, and that in all other respects said judgment be affirmed.

AFFIRMED IN PART AND REVERSED IN PART.